Gurpreet Kaur, Esq.
Kaur Legal Group, PC
674 County Square Dr, Suite 305
Ventura, CA 93003
Ph. 805-300-9003; Cell 909-997-4570
Fax: 805-716-6100
E-mail: gurpreetkauresq@gmail.com
*Attorney for Petitioner*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MOHIT PATHANIA<br><br>Petitioner,<br>v.<br>MARK BOWEN, Acting-Warden of the Adelanto Detention Center, David J. Venturella, Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States<br><br>Respondents. | Civil Action No.<br><br>**VERIFIED PETITION FOR HABEAS CORPUS** |

## INTRODUCTION

1. Petitioner Pathania respectfully petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his unlawful re-detention and seeking immediate release and restoration to the parole and supervision status that existed before Respondents deprived him of his physical liberty without constitutionally adequate pre-deprivation process. This case arises from Respondents' abrupt revocation of Petitioner's previously granted liberty after DHS affirmatively exercised its discretion to release him on parole and permitted him to reside, work, pursue his affirmative asylum application, and comply with immigration supervision requirements in the community for nearly four years. Despite Petitioner's complete compliance with every condition imposed by DHS, Respondents summarily detained him during a regularly scheduled ICE appointment without advance notice, without identifying any violation or changed circumstance, and without affording him any meaningful opportunity to contest the deprivation of his liberty.

2. Petitioner is a native and citizen of India who entered the United States without inspection on or about December 30, 2022. Following his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien, but thereafter affirmatively exercised its discretion to release him on parole. As conditions of that release, Petitioner was enrolled in Alternatives to Detention ("ATD") and required to report to ICE as directed. DHS thus made an affirmative custody determination permitting Petitioner to reside in the community subject to supervision rather than remain in physical detention.

3. Since his release in December 2022, Petitioner has fully complied with every condition imposed by DHS. He has consistently appeared for all scheduled ICE appointments, complied with ATD requirements, maintained contact with immigration authorities, and never violated the terms of his release. Petitioner has no criminal history, has established substantial family and community ties, and is gainfully employed pursuant to employment authorization obtained through his timely filed affirmative asylum application, which remains pending before USCIS. Throughout this period, DHS knew Petitioner's whereabouts, monitored his compliance, and permitted him to continue residing and working in the community.

4. On October 7, 2026, DHS served Petitioner with a Notice to Appear charging him solely under INA § 212(a)(6)(A)(i), based upon his presence in the United States without having been admitted or paroled for purposes of that inadmissibility provision. The charge is not based on criminal conduct, violation of an ATD condition, failure to report, or any alleged attempt to evade immigration authorities. Petitioner's immigration proceedings do not themselves establish that he presents a danger to the community or a risk of flight.

5. On July 8, 2025, DHS issued Interim Guidance advancing the position that certain noncitizens who entered without inspection remain subject to detention under 8 U.S.C. § 1225(b), notwithstanding their prior release into the United States. DHS has relied upon that position, together with *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), to support its interpretation of mandatory detention and limitations on Immigration Judge bond jurisdiction. Petitioner disputes the application of § 1225(b) to his circumstances and maintains that § 1226(a) governs his custody. More fundamentally, however, the statutory dispute does not resolve Petitioner's independent Fifth Amendment claim arising from the revocation of his previously granted liberty without constitutionally adequate procedures. The Government's

assertion of detention authority does not, standing alone, answer whether the procedures employed to deprive Petitioner of his liberty satisfied due process.

6. On October 6, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment, precisely as he had consistently done since his release in December 2022. He appeared in good faith, in compliance with DHS's reporting requirements, and with no reason to believe that his liberty would be revoked. Petitioner had never missed an appointment, violated an ATD requirement, failed to comply with an ICE directive, or engaged in conduct suggesting that he presented a danger to the community or a flight risk.

7. During that appointment, ICE officers abruptly detained Petitioner. When Petitioner asked why he was being arrested and detained, the officers failed to provide any meaningful explanation identifying misconduct, a violation of his parole conditions, a change in circumstances, or an individualized reason requiring his immediate confinement. Petitioner informed the officers that he had a pending affirmative asylum application and presented his employment authorization document demonstrating his authorization to work while pursuing that application. Nevertheless, ICE officers proceeded with his detention without providing him any meaningful opportunity to address or contest the asserted basis for the deprivation of his liberty.

8. Petitioner's detention was especially arbitrary given the circumstances of his appearance. He was not apprehended while attempting to evade immigration authorities, was not arrested following any criminal conduct, and had not absconded or violated any reporting requirement. To the contrary, he voluntarily presented himself to the very agency responsible for supervising him. His appearance at the scheduled appointment affirmatively demonstrated his continued willingness to comply with DHS supervision.

9. At no point before revoking Petitioner's liberty did Respondents provide advance notice that his parole or community release would be terminated, identify any individualized factual basis warranting re-detention, provide a meaningful opportunity to respond, or afford him a hearing before a neutral decisionmaker. Nor did Respondents identify any emergency circumstance requiring immediate confinement before such procedures could be provided. Instead, Respondents summarily deprived Petitioner of the liberty he had enjoyed for nearly four years while complying with all government-imposed conditions.

10. Petitioner's substantial liberty interest arises not merely from his physical presence in the United

States, but from DHS's affirmative decision to release him on parole, its continued supervision of him in the community, and his nearly four years of uninterrupted compliance. During that period, Petitioner developed substantial reliance interests, including gainful employment, family relationships, community ties, and the continued pursuit of his pending asylum application. Under the Fifth Amendment, the Government's decision to revoke that previously granted liberty implicates procedural due process protections requiring consideration of the private liberty interest, the risk of erroneous deprivation, the value of additional safeguards, and the Government's asserted interests. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); see also *Morrissey v. Brewer*, 408 U.S. 471, 482–87 (1972).

11. Respondents provided none of the procedural protections Petitioner contends were constitutionally required before his re-detention. They did not provide notice of any proposed revocation, disclose an individualized basis for the decision, or afford Petitioner a meaningful opportunity to contest that decision before depriving him of his liberty. Nothing in Petitioner's known history of compliance, absence of criminal conduct, or voluntary appearance at his scheduled ICE appointment suggested an urgent necessity to bypass such procedures.

12. Petitioner's constitutional injury occurred when Respondents revoked his previously granted liberty without constitutionally adequate pre-deprivation process. Petitioner does not seek merely an Immigration Judge bond hearing or a prospective determination of whether he should remain detained. Rather, he challenges the constitutionality of the Government's decision to re-detain him in the first instance. A subsequently offered bond hearing would not retroactively provide the notice and opportunity to be heard that Petitioner contends were required before his liberty was revoked, nor would it necessarily restore the position he occupied before the challenged deprivation.

**13.** Accordingly, Petitioner seeks immediate release from immigration custody and restoration to his prior parole and supervision conditions as the appropriate remedy for Respondents' unconstitutional deprivation of liberty. Petitioner further requests appropriate prospective relief preventing Respondents from again revoking that restored liberty without constitutionally adequate procedures, except where a legally recognized exigency justifies immediate action. Petitioner seeks restoration of the status quo ante, not a post hoc

bond hearing that leaves the challenged deprivation of liberty in place.

## JURISDICTION

14. This action arises under the Constitution of the United States and the INA, 8 U.S.C. § 1101 *et seq.*

15. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

16. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

17. Venue is proper because Petitioner is detained in Adelanto Detention Center, which is within the jurisdiction of this District. Venue is also proper in this District because Respondents are officers, employees, or agencies of the United States. *See* 28 U.S.C. § 1391(e).

## PARTIES

18. Respondent Mark Bowen is sued in her official capacity as Warden of the Adelanto Detention Center. Respondent Bowen is the physical custodian of Petitioner.

19. Respondent David J. Venturella is sued in his official capacity as the Acting Director of U.S. Immigration and Customs Enforcement. Respondent Venturella is a legal custodian of Petitioner and has authority to release him.

20. Respondent Markwayne Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security. In this capacity, Respondent Mullin is responsible for the implementation and enforcement of the INA, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Mullin is a legal custodian of Petitioner.

21. Respondent Todd Blanche is sued in his official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice. In that capacity, he has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the BIA. Respondent Blanche is a legal custodian of Petitioner.

## STATEMENT OF FACTS

22. Petitioner Pathania is a native and citizen of India.

23. Petitioner entered the United States without inspection on or about December 30, 2022.

24. Shortly after his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien.

25. DHS thereafter affirmatively exercised its discretionary authority to release Petitioner on parole rather than continue his physical detention.

26. As conditions of his release, Petitioner was enrolled in Alternatives to Detention ("ATD") and required to report to Immigration and Customs Enforcement ("ICE") as directed.

27. Since his release in December 2022, Petitioner has fully complied with every condition imposed by DHS for nearly four years.

28. Petitioner has never missed a scheduled ICE appointment and has consistently appeared before immigration authorities whenever directed.

29. Petitioner has never violated any ATD requirement or any other condition of his release.

30. Petitioner has no criminal history and has never engaged in conduct suggesting that he poses a danger to the community or a risk of flight.

31. Following his release, Petitioner timely filed an affirmative asylum application with United States Citizenship and Immigration Services ("USCIS"), which remains pending before the asylum office.

32. Based upon his pending asylum application, Petitioner obtained employment authorization and has maintained valid employment authorization while pursuing his application.

33. Petitioner has remained gainfully employed and has developed substantial family and community ties within the United States.

34. Throughout Petitioner's nearly four years of release, DHS remained fully aware of his whereabouts through his regular ICE reporting, continued ATD compliance, and consistent participation in the immigration process.

35. At no time before his re-detention did DHS notify Petitioner that he had violated any condition of release, failed to comply with any reporting requirement, or engaged in conduct warranting revocation of his previously granted liberty.

36. On July 8, 2025, DHS issued Interim Guidance asserting that certain noncitizens who entered the United States without inspection remain subject to mandatory detention under 8 U.S.C. § 1225(b), notwithstanding their prior release into the interior of the United States.

37. DHS has subsequently relied upon that Interim Guidance, together with *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), to advance its interpretation that certain noncitizens previously released into the community remain applicants for admission subject to detention under § 1225(b), rather than discretionary detention under 8 U.S.C. § 1226(a).

38. On October 6, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment, as directed by DHS and consistent with his established history of compliance since December 2022.

39. Petitioner had attended every prior ICE appointment, complied with every ATD requirement, and remained available to immigration authorities throughout his release. He appeared for his October 6, 2026 appointment in good faith, without any prior notice that DHS intended to revoke his liberty.

40. During the appointment, Petitioner informed ICE officers that he had a pending affirmative asylum application and possessed valid employment authorization issued in connection with that application.

41. Petitioner provided his employment authorization document to ICE officers and attempted to explain his continued compliance with immigration requirements.

42. Notwithstanding Petitioner's complete compliance, ICE officers immediately detained him without providing advance notice, identifying any violation of his release conditions, or affording him a meaningful opportunity to address any concerns before taking him into custody.

43. Upon being detained, Petitioner asked ICE officers why he was being arrested and deprived of his liberty.

44. ICE officers failed to provide Petitioner with any meaningful explanation identifying a violation of law, violation of his parole or ATD conditions, criminal conduct, or other individualized factual basis warranting his immediate detention.

45. ICE officers did not identify any changed circumstance occurring after DHS's prior decision to release Petitioner on parole that would necessitate his immediate confinement.

46. ICE officers did not inform Petitioner that he had been individually determined to pose a danger to the community or a risk of flight. Nor was Petitioner afforded any meaningful opportunity to contest such a determination before his detention.

47. Petitioner was not provided advance notice that DHS intended to revoke his previously granted liberty or terminate his continued release under immigration supervision.

48. Before being taken into custody, Petitioner was not advised of any specific factual or legal basis upon which DHS intended to rely in revoking his liberty.

49. Petitioner was not afforded a meaningful opportunity to explain his nearly four years of compliance, present evidence of his employment and family ties, or contest the asserted necessity of detention before his liberty was revoked.

50. Petitioner was not provided any individualized pre-deprivation hearing before being taken into ICE custody on October 6, 2026.

51. Petitioner was not afforded an opportunity to present evidence or argument before a neutral decisionmaker prior to detention, notwithstanding his longstanding compliance with DHS supervision and the absence of any identified violation of his release conditions.

52. On October 7, 2026, one day after Petitioner had already been detained, DHS served him with a Notice to Appear charging him under INA § 212(a)(6)(A)(i).

53. The Notice to Appear charges Petitioner solely under INA § 212(a)(6)(A)(i), based upon his presence in the United States without having been admitted or paroled for purposes of that inadmissibility provision.

54. The Notice to Appear does not allege that Petitioner committed any criminal offense.

55. The Notice to Appear does not allege that Petitioner violated any condition of his prior release, failed to appear for an ICE appointment, or attempted to evade immigration authorities.

56. Between DHS's initial decision to release Petitioner on parole in December 2022 and his re-detention on October 6, 2026, Petitioner incurred no criminal history, committed no known violation of his release conditions, and consistently complied with DHS supervision. No individualized changed circumstance necessitating immediate detention was communicated to Petitioner.

57. Respondents' re-detention of Petitioner occurred against the backdrop of DHS's July 8, 2025 Interim Guidance and the agency's interpretation of detention authority reflected in *Matter of Q. Li* and *Matter of Yajure-Hurtado*. Petitioner challenges any reliance upon a categorical detention policy to revoke his previously granted liberty without constitutionally adequate individualized procedures.

58. Petitioner disputes the applicability of mandatory detention under 8 U.S.C. § 1225(b) and maintains that his custody is governed by the discretionary detention framework of 8 U.S.C. § 1226(a). Independently of that statutory dispute, Petitioner challenges the constitutionality of the procedures employed to revoke his previously granted liberty.

59. Regardless of which statutory detention provision ultimately governs, Respondents re-detained Petitioner without providing advance notice, a meaningful opportunity to respond, an individualized pre-deprivation hearing, or any other procedure affording Petitioner an opportunity to contest the revocation of his liberty before it occurred.

60. Petitioner remains in immigration custody following his October 6, 2026 re-detention, without having received an individualized hearing or meaningful opportunity to contest the deprivation before it occurred.

61. Petitioner's nearly four years of complete compliance with DHS supervision, absence of criminal history, gainful employment, valid employment authorization, pending affirmative asylum application, substantial family and community ties, and voluntary appearance at his regularly scheduled ICE appointment

underscore the absence of any communicated individualized justification requiring immediate detention without prior process.

62. Respondents deprived Petitioner of his physical liberty without the pre-deprivation procedures he contends were constitutionally required under the Fifth Amendment. Petitioner therefore challenges the legality of his continued confinement and seeks immediate release and restoration to the parole and supervision conditions that existed before his October 6, 2026 re-detention, rather than a post-deprivation bond hearing that would leave the challenged deprivation in place.

## STATUTORY FRAMEWORK

63. The INA prescribes three basic forms of detention for noncitizens in removal proceedings. First, 8 U.S.C. § 1226(a) authorizes the detention of noncitizens in standard non-expedited removal proceedings before an IJ. *See* 8 U.S.C. § 1226(a); 8 U.S.C. § 1229a. Individuals in section 1226(a) detention are entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

64. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under 8 U.S.C. § 1225(b)(2).

65. Finally, the INA also provides for detention of noncitizens who are subject to final orders of removal, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b). The detention provisions at section 1226(a) and 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(c) was most recently amended earlier this year by the Laken Riley Act ("LRA"), Pub. L. No. 119-1, 139 Stat. 3 (2025).

66. Following enactment of the IIRIRA, the EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under section 1225 and that they were instead detained under section 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312,

10323 (Mar. 6, 1997). In the decades that followed, most noncitizens who entered without inspection—unless they were subject to some other detention authority—received bond hearings. This practice was also consistent with the practice prior to the enactment of the IIRIRA, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that section 1226(a) simply "restates" the detention authority previously found at section 1252(a)).

67. On July 8, 2025, DHS issued a memo to all employees of ICE stating that "[t]his message serves as notice that DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that section 235 of the Immigration and Nationality Act (INA) [8 U.S.C. § 1225], rather than section 236 [8 U.S.C. § 1226], is the applicable immigration detention authority for all applicants for admission. The following interim guidance is intended to ensure immediate and consistent application of the Department's legal interpretation while additional operational guidance is developed." The memo further stated DHS' new position with regard to custody determinations as follows:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1) [8 U.S.C. § 1225(a)(1)]. **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated. **The only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c) [8 U.S.C. § 1226(c)]**.
>
> Moving forward, ICE will not issue Form I-286, Notice of Custody Determination, to applicants for admission because Form I-286 applies by its terms only to custody determinations under INA § 236 and part 236 of Title 8 of the Code of Federal Regulations. With a limited exception for certain habeas petitioners, on which the Office of the Principal Legal Advisor (OPLA) will individually advise, if Enforcement and Removal Operations (ERO) previously conducted a custody determination for an applicant for admission still detained in ICE custody, ERO will affirmatively cancel the Form I-286. *See* https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last accessed October 18, 2025) (emphasis original).

68. As a result, DHS now considers all noncitizens who have entered the United States without

inspection and are subject to the grounds of inadmissibility, including long-time U.S. residents, to be subject to mandatory detention under section 1225(b) and ineligible for release on bond. Conversely, according to DHS "[t]he only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under INA § 236(a) [8 U.S.C. § 1226(a)] during removal proceedings are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c) [8 U.S.C. § 1226(c)]." *Id.*

69. Shortly thereafter, the Board of Immigration Appeals ("BIA") issued decisions reflecting the same interpretation. In Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025) and Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), the Board concluded that Immigration Judges lack bond authority over certain noncitizens present in the United States without admission because, in the Board's view, § 1225(b)(2)(A) mandates detention of such "applicants for admission" during removal proceedings.

70. The Ninth Circuit has since confirmed that DHS's detention authority must derive from the statute enacted by Congress and may not be expanded through administrative interpretation. See Rodriguez Vazquez v. Bostock, 3: 25-cv-05240 (9th Cir. July 30, 2026). Rodriguez Vazquez reinforces that mandatory detention provisions must be applied according to their statutory terms and that DHS may not invoke mandatory detention where Congress has not authorized it.

71. Petitioner Pathania entered the United States on or about December 30, 2022, without inspection. Shortly after his entry, DHS briefly detained Petitioner pursuant to a Form I-200, Warrant for Arrest of Alien, but thereafter affirmatively exercised its discretion to release him on parole. As conditions of that release, Petitioner was enrolled in Alternatives to Detention ("ATD") and required to report to Immigration and Customs Enforcement ("ICE") as directed. Petitioner thereafter remained at liberty in the United States for nearly four years while pursuing an affirmative asylum application, maintaining gainful employment pursuant to valid employment authorization, and establishing substantial family and community ties. Petitioner maintains that his subsequent detention is governed by 8 U.S.C. § 1226(a), rather than § 1225(b), in light of DHS's prior custody determination and his release into the community. DHS's prior exercise of release authority and Petitioner's longstanding compliance are also central to his independent constitutional claim that the Government could not

summarily revoke his previously granted liberty without constitutionally adequate procedures.

72. Respondents' asserted detention authority implicates DHS's July 8, 2025 Interim Guidance, together with *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), concerning the application of § 1225(b) to certain noncitizens who entered without inspection. Petitioner disputes the application of mandatory detention to his circumstances and maintains that the Government cannot rely solely upon a categorical interpretation of detention authority to justify the revocation of his previously granted liberty without addressing the independent procedural requirements of the Fifth Amendment.

73. Neither *Matter of Q. Li* nor *Matter of Yajure-Hurtado* resolves Petitioner's independent constitutional challenge to the absence of pre-deprivation process. Those administrative decisions concern statutory detention classifications and Immigration Judge custody authority; they do not independently adjudicate whether the Fifth Amendment permits DHS to re-detain a previously paroled individual, after nearly four years of complete compliance, without advance notice or a meaningful opportunity to contest the deprivation of liberty. Petitioner does not seek a bond hearing as relief from that constitutional violation. He seeks immediate release and restoration of the liberty that Respondents revoked without constitutionally adequate procedures.

74. Respondents' re-detention of Petitioner raises a substantial statutory dispute concerning the distinction between § 1225(b) and § 1226(a). Petitioner maintains that DHS's prior affirmative decision to release him on parole, followed by years of community supervision and compliance, weighs against Respondents' asserted application of mandatory detention. Independently, the Government's statutory authority to detain does not, by itself, establish that the procedures employed to revoke Petitioner's previously granted liberty satisfied the Due Process Clause.

75. Independent of the parties' dispute concerning the applicable detention statute, Petitioner challenges his continued detention under the Fifth Amendment because Respondents revoked his previously granted liberty without providing constitutionally adequate pre-deprivation process. Petitioner seeks immediate release and restoration to his prior parole and supervision conditions, not a subsequent bond hearing.

76. DHS initially determined that Petitioner could be released from physical custody on parole subject to ATD supervision and regular ICE reporting requirements. Petitioner relied upon that determination and established his life in the community. He maintained gainful employment, developed substantial family and community ties, remained continuously available to immigration authorities, attended every scheduled ICE appointment, and complied with every ATD requirement. Petitioner has no criminal history and was never advised that he had violated any condition of his release.

77. Throughout his nearly four years of release, Petitioner maintained valid employment authorization issued in connection with his timely filed affirmative asylum application, which remains pending before the United States Citizenship and Immigration Services ("USCIS") Asylum Office. DHS remained aware of Petitioner's whereabouts and continued compliance through his regular ICE reporting and ATD supervision.

78. On October 6, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment, just as he had consistently done since his release on parole in December 2022. Petitioner had never missed an appointment, violated any reporting requirement, or failed to comply with any condition imposed by DHS. His voluntary appearance demonstrated his continued willingness to comply with immigration supervision.

79. During that appointment, Petitioner informed ICE officers that he possessed valid employment authorization based upon his pending affirmative asylum application and provided his employment authorization document.

80. Rather than allowing Petitioner an opportunity to address any concerns, ICE officers abruptly detained him. When Petitioner asked why he was being detained, the officers failed to provide any meaningful explanation. They did not identify any violation of Petitioner's release conditions, criminal conduct, changed circumstance, or individualized factual basis necessitating his immediate detention.

81. ICE officers took Petitioner into custody despite his nearly four years of complete compliance with every condition imposed by DHS. Petitioner was not apprehended while evading immigration authorities or following any failure to report. Rather, he was detained after voluntarily presenting himself at the very appointment DHS required him to attend.

82. Before detaining Petitioner, ICE officers did not provide advance notice that DHS intended to revoke his liberty or explain the individualized factual or legal basis upon which his re-detention was contemplated.

83. Petitioner informed ICE officers of his pending asylum application and valid employment authorization and attempted to address the circumstances of his continued compliance. Nevertheless, ICE officers did not provide him a meaningful opportunity to contest the decision to detain him before taking him into custody.

84. ICE officers detained Petitioner without providing any meaningful opportunity to address, explain, or contest the asserted basis for his detention before his previously granted liberty was revoked.

85. DHS did not identify any violation of Petitioner's release conditions. Petitioner had complied with every ATD requirement, appeared for every scheduled ICE appointment, and remained available to immigration authorities throughout his release.

86. Petitioner was not provided advance notice that DHS intended to revoke his previously granted liberty or terminate his continued release under immigration supervision.

87. Petitioner was not advised of any individualized factual basis supporting his immediate confinement before being taken into ICE custody.

88. Petitioner was not afforded an opportunity to contest the proposed deprivation of his liberty before a neutral decisionmaker prior to his re-detention.

89. Petitioner was not provided any individualized pre-deprivation hearing or meaningful opportunity to present evidence or argument before Respondents deprived him of his physical liberty on October 6, 2026.

90. On October 7, 2026, one day after Petitioner had already been detained, DHS served him with a Notice to Appear charging him solely under INA § 212(a)(6)(A)(i). The Notice to Appear alleges no criminal conduct, violation of his prior release conditions, failure to comply with ATD, or failure to report to ICE. Its subsequent service did not provide the individualized pre-deprivation process that Petitioner contends was constitutionally required before his liberty was revoked.

91. Between DHS's original decision to release Petitioner on parole in December 2022 and its decision to re-detain him on October 6, 2026, Petitioner incurred no criminal history, violated no condition of release, and consistently complied with DHS supervision. Respondents did not identify any intervening circumstance requiring immediate detention without prior notice or an opportunity to be heard.

92. Petitioner's prior release, nearly four years of compliance, and substantial reliance interests implicate the protections of the Fifth Amendment's Due Process Clause. In evaluating the procedures required before the Government revokes an individual's previously granted liberty, courts consider the nature of the liberty interest, the risk of erroneous deprivation, and the Government's asserted justification for the deprivation. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 482–87 (1972). Petitioner maintains that these principles required constitutionally adequate pre-deprivation safeguards under the circumstances presented here.

93. The Due Process Clause generally favors notice and a meaningful opportunity to be heard before the Government deprives an individual of a protected liberty interest, subject to recognized exceptions and the circumstances of the particular deprivation. *See Mathews*, 424 U.S. at 333–35; *Fuentes v. Shevin*, 407 U.S. 67, 80–82 (1972). Petitioner maintains that his nearly four years of compliance, voluntary appearance for his scheduled ICE appointment, lack of criminal history, and absence of any identified exigency required Respondents to provide meaningful procedures before revoking his liberty.

94. Respondents provided none of those protections. Petitioner appeared at a regularly scheduled ICE appointment in complete compliance with DHS supervision, yet Respondents summarily revoked his liberty without advance notice, without identifying an individualized reason requiring immediate confinement, without providing a meaningful opportunity to respond, and without affording him any individualized pre-deprivation hearing. Respondents did not identify any emergency, violation of supervision, or other exigent circumstance requiring the Government to bypass those procedures.

95. The constitutional violation alleged here occurred when Respondents revoked Petitioner's previously granted liberty without constitutionally adequate pre-deprivation process. Petitioner does not seek a subsequent bond hearing, a new discretionary custody determination, or an opportunity to request release from

the detention imposed through the challenged procedures. A post-deprivation bond hearing cannot retroactively supply the notice and meaningful opportunity to be heard that Petitioner maintains the Fifth Amendment required before Respondents deprived him of his physical liberty. Nor would a later custody hearing, standing alone, restore the liberty and supervision status that existed immediately before the challenged detention. Accordingly, Petitioner seeks immediate release and restoration to his prior parole and supervision conditions as the appropriate remedy for the unconstitutional deprivation, together with protection against renewed detention without constitutionally adequate procedures.

96. Petitioner's claim is not that Respondents merely failed to provide a subsequent opportunity to request release from custody. Rather, Petitioner challenges the Government's initial decision to revoke his previously granted liberty without the procedures constitutionally required before that deprivation. Under the circumstances presented, where Petitioner voluntarily appeared for his scheduled ICE appointment after nearly four years of complete compliance and no individualized exigency was identified, Petitioner maintains that a post-deprivation custody hearing would be an inadequate substitute for the required pre-deprivation safeguards. Accordingly, Petitioner seeks immediate release and restoration of the status quo ante, rather than a subsequent bond hearing that would leave the challenged deprivation in place.

## **CLAIMS FOR RELIEF**

### **COUNT ONE**

### **Violation of Petitioner's Procedural Due Process Rights**

97. The allegations in the above paragraphs are realleged and incorporated herein.

98. The Fifth Amendment prohibits the government from depriving a person of liberty without due process of law

99. Under Mathews v. Eldridge, 424 U.S. 319 (1976), courts evaluate procedural due process claims by considering: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the value of additional safeguards; and (3) the governmental interests at stake.

100. The private interest at stake here—freedom from physical detention—is among the most fundamental liberty interests protected by the Constitution.

101. Petitioner possessed a substantial liberty interest arising from DHS's prior decision to release him on parole and permit him to remain free in the community for more than three years.

102. Petitioner's years of complete compliance, lawful employment, family and community ties, and continued availability to immigration authorities created a substantial liberty interest protected by the Due Process Clause.

103. The risk of erroneous deprivation is extraordinarily high where, as here, Respondents revoked Petitioner's previously granted liberty without advance notice, without identifying the factual or legal basis for detention, without providing any meaningful opportunity to respond, and without any individualized determination by a neutral decisionmaker.

104. Additional procedural safeguards—including advance notice, disclosure of the asserted basis for detention, an opportunity to respond, and an individualized pre-deprivation hearing—would have substantially reduced the risk of erroneous deprivation while imposing minimal administrative burden.

105. Prior to detaining Petitioner on October 6, 2026, Respondents failed to provide:

a. advance notice that his liberty would be revoked;

b. notice of any alleged violation or changed circumstance;

c. an opportunity to contest the legal or factual basis for detention;

d. an individualized custody determination; or

e. a hearing before a neutral decisionmaker.

106. Petitioner repeatedly asked ICE officers why he was being detained and informed officers that he possessed valid employment authorization based upon his pending affirmative asylum application before the USCIS Asylum Office.

107. ICE nevertheless detained Petitioner without providing any meaningful opportunity to be heard.

108. There were no changed circumstances, intervening events, criminal allegations, violations of release conditions, or individualized findings justifying the revocation of Petitioner's liberty.

109. Respondents revoked Petitioner's previously granted liberty without providing constitutionally adequate notice, a meaningful opportunity to respond, an individualized determination, or any other constitutionally

adequate pre-deprivation process.

110. Because the constitutional violation occurred at the moment Petitioner's liberty was revoked, a later custody proceeding cannot cure the completed constitutional injury.

111. Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment.

**COUNT TWO**

**Violation of Fifth Amendment Right to Substantive Due Process**

112. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

113. The Fifth Amendment provides that no person shall be deprived of liberty without due process of law. U.S. Const. amend. V. Freedom from physical restraint lies at the core of the liberty protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

114. Although the Government possesses authority to detain noncitizens under circumstances authorized by Congress, immigration detention remains subject to applicable constitutional limitations and must serve a legitimate governmental purpose.

115. Petitioner entered the United States without inspection on December 30, 2022. Following a brief initial detention pursuant to a Form I-200, DHS affirmatively exercised its discretion to release him on parole subject to ATD supervision and regular ICE reporting.

116. For nearly four years, Petitioner complied with every condition imposed by DHS. He maintained gainful employment pursuant to valid employment authorization, pursued his pending affirmative asylum application, attended every scheduled ICE appointment, developed substantial family and community ties, and remained continuously available to immigration authorities. Petitioner has no criminal history.

117. On October 6, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment. During that appointment, he informed ICE officers of his pending affirmative asylum application and presented his valid employment authorization document.

118. ICE officers nevertheless immediately detained Petitioner without identifying any violation of his parole conditions, criminal conduct, failure to report, changed circumstance, or individualized factual justification

requiring his immediate confinement.

119. Petitioner asked why he was being detained, but ICE officers failed to provide a meaningful explanation. Petitioner was deprived of his liberty notwithstanding his complete compliance with DHS supervision and his voluntary appearance at the appointment.

120. Respondents' re-detention of Petitioner occurred against the backdrop of DHS's July 8, 2025 Interim Guidance and the agency's interpretation of detention authority reflected in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025). Petitioner challenges any application of a categorical detention interpretation that disregards his prior release, longstanding compliance, and individualized circumstances.

121. Petitioner alleges that Respondents' decision to revoke his previously granted liberty after nearly four years of perfect compliance, without identifying any individualized factual justification or urgent necessity for immediate confinement, was arbitrary and disproportionate to any legitimate governmental interest asserted under the circumstances.

122. Petitioner's detention was not preceded by any identified criminal conduct, violation of release conditions, attempt to abscond, or other intervening circumstance demonstrating that continued liberty under existing supervision had become inadequate.

123. To the extent Respondents rely exclusively upon a changed legal interpretation to justify Petitioner's re-detention, Petitioner maintains that such reliance, without individualized consideration of his circumstances and the liberty previously granted to him, renders the challenged deprivation arbitrary in the constitutional sense.

124. Respondents' actions therefore violate Petitioner's substantive due process rights under the Fifth Amendment, independently of the procedural deficiencies alleged in Count One.

125. Because Petitioner challenges the legality of the re-detention itself, rather than merely the absence of a subsequent custody review, he seeks immediate release and restoration to his prior parole and supervision conditions. A later bond hearing would not itself resolve his claim that the initial decision to revoke his liberty was constitutionally arbitrary.

## COUNT THREE

**Violation of the Immigration and Nationality Act — Unlawful Detention Under 8 U.S.C. §§ 1225(b) and 1226(a)**

126. Petitioner realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

127. Petitioner entered the United States without inspection on December 30, 2022. Shortly after his entry, DHS detained him pursuant to a Form I-200, Warrant for Arrest of Alien, but thereafter exercised its authority to release him on parole subject to ATD supervision and regular ICE reporting.

128. DHS thereafter permitted Petitioner to remain at liberty in the community for nearly four years while he pursued an affirmative asylum application, maintained employment authorization, established family and community ties, and complied with every condition imposed by immigration authorities.

129. On October 6, 2026, Respondents re-detained Petitioner during a regularly scheduled ICE appointment despite his complete compliance and without identifying any intervening violation or individualized factual circumstance requiring immediate detention.

130. On October 7, 2026, DHS served Petitioner with a Notice to Appear charging him solely under INA § 212(a)(6)(A)(i). Petitioner is not alleged to be subject to mandatory detention based upon criminal conduct under 8 U.S.C. § 1226(c).

131. Respondents' asserted detention authority implicates DHS's July 8, 2025 Interim Guidance, *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), and *Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025), concerning the classification of certain noncitizens as applicants for admission subject to § 1225(b).

132. Petitioner disputes the application of mandatory detention under § 1225(b) to his circumstances and maintains that his custody following DHS's affirmative decision to release him into the community is governed by the discretionary detention framework of 8 U.S.C. § 1226(a).

133. Section 1226(a) authorizes the arrest and detention of a noncitizen pending a decision on removal and permits release under conditions prescribed by statute. Petitioner maintains that Respondents cannot disregard the applicable statutory custody framework or rely upon an erroneous detention classification to justify his

continued confinement.

134. Neither *Matter of Q. Li* nor *Matter of Yajure-Hurtado* independently resolves Petitioner's constitutional challenge to the procedures employed in revoking his previously granted liberty. Those decisions do not eliminate the obligation to comply with applicable constitutional protections when exercising statutory detention authority.

135. Petitioner contends that Respondents' categorical application of § 1225(b), notwithstanding his prior parole release, nearly four years of compliance, and subsequent re-detention in the interior of the United States, misconstrues the statutory framework applicable to his custody.

136. Respondents' asserted application of mandatory detention also fails to resolve whether the decision to re-detain Petitioner complied with applicable statutory and regulatory requirements governing custody and release.

137. Petitioner maintains that his continued detention is unlawful because Respondents have invoked an inapplicable mandatory detention framework and deprived him of liberty without the individualized justification and procedures required under the governing statutory and constitutional provisions.

138. Because Petitioner's continued detention is unlawful under the INA and the Fifth Amendment, habeas relief under 28 U.S.C. § 2241 is warranted. Petitioner seeks immediate release and restoration to his prior parole and supervision conditions, not an Immigration Judge bond hearing or other post-deprivation custody proceeding as alternative relief.

## PRAYER FOR RELIEF

Wherefore, Petitioner requests this Court to grant the following:

1. Assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241;

2. Enjoin Respondents from transferring Petitioner outside the jurisdiction of this Court during the pendency of these proceedings absent prior authorization from this Court;

3. Declare that Respondents' revocation of Petitioner's previously granted liberty and continued detention violate the Fifth Amendment, and the Immigration and Nationality Act;

4. Order Petitioner's immediate release from ICE custody and restoration to the parole, ATD supervision, and ICE reporting conditions that existed immediately before his October 6, 2026 re-detention, thereby restoring the status quo ante;

5. Enjoin Respondents from continuing to detain Petitioner absent constitutionally adequate procedures and lawful statutory authority;

6. Award Petitioner his reasonable attorneys' fees, costs, and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, to the extent permitted by law;

7. Retain jurisdiction to enforce any order entered in this matter; and

8. Grant such other and further relief as the Court deems just, proper, and equitable.

Respectfully,

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.
Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am counsel for Petitioner, and I submit this verification on his behalf. Because Petitioner is detained at the Adelanto Detention Center and immediate relief is sought, counsel verifies this petition on his behalf pursuant to 28 U.S.C. § 2242. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 12th day of October, 2026.

/s/ *Gurpreet Kaur*
Gurpreet Kaur, Esq.