**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MOHIT PATHANIA,<br>Petitioner,<br>v.<br>MARK BOWEN ET AL,<br>Respondents. | Case No. 5:26-cv-06019-MAR<br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

**I.**

**INTRODUCTION**

On October 12, 2026, Petitioner Mohit Pathania (A# 246-595-886) ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. Dkt. 1, ("Pet."). The clerk issued a Notice of General Order and Briefing Schedule on October 13, 2026, which ordered Respondents to file an Answer to the Petition by October 20, 2026. Dkts. 4, 5. Respondents have not filed an Answer. The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. Dkts. 2, 6. **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to**

**immediately release Petitioner from custody.**

## II.

## <u>FACTUAL BACKGROUND</u>

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel. Pet. at 23. Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so. Dkts. 5, 7. Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. <u>See</u> C.D. Cal. L.R. 7-12; <u>Carlson v. Landon</u>, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a native and citizen of India. Pet. at 6. Petitioner entered the United States in 2022 and was detained by immigration officials. <u>Id.</u> Shortly thereafter, he was paroled into the U.S. and released with the requirement that he enroll in Alternatives to Detention ("ATD") and report to Immigration and Customs Enforcement ("ICE") as directed. <u>Id.</u>; Dkt. 1-3, Ex. A. Since his release in December 2022, Petitioner has fully complied with every condition imposed by DHS for nearly four years. Petitioner has never missed a scheduled ICE appointment and has consistently appeared before immigration authorities whenever directed. Petitioner has never violated any ATD requirement or any other condition of his release. Petitioner has no criminal history. Following his release, Petitioner timely filed an affirmative asylum application with United States Citizenship and Immigration Services ("USCIS"), which remains pending before the asylum office. Based upon his pending asylum application, Petitioner obtained employment authorization and has maintained valid employment authorization while pursuing his application. Petitioner has remained gainfully employed and has developed substantial family and community ties within the United States. <u>Id.</u>

On October 6, 2026, Petitioner voluntarily appeared for his regularly scheduled ICE appointment, as directed by DHS and consistent with his established history of

compliance since December 2022. Id. at 7. ICE officers immediately detained him without providing advance notice, identifying any violation of his release conditions, or affording him a meaningful opportunity to address any concerns before taking him into custody. Id. At no time before his re-detention did DHS notify Petitioner that he had violated any condition of release, failed to comply with any reporting requirement, or engaged in conduct warranting revocation of his previously granted liberty. Id. Upon being detained, Petitioner asked ICE officers why he was being arrested and deprived of his liberty. Id. ICE officers failed to provide Petitioner with any meaningful explanation identifying a violation of law, violation of his parole or ATD conditions, criminal conduct, or other individualized factual basis warranting his immediate detention. Id. at 8. ICE officers did not identify any changed circumstance occurring after DHS's prior decision to release Petitioner on parole that would necessitate his immediate confinement. Id. ICE officers did not inform Petitioner that he had been individually determined to pose a danger to the community or a risk of flight. Id. Nor was Petitioner afforded any meaningful opportunity to contest such a determination before his detention. Id. Petitioner was not provided advance notice that DHS intended to revoke his previously granted liberty or terminate his continued release under immigration supervision. Id. Before being taken into custody, Petitioner was not advised of any specific factual or legal basis upon which DHS intended to rely in revoking his liberty. Id.

Petitioner was not provided any individualized pre-deprivation hearing before being taken into ICE custody on October 6, 2026. Id. Petitioner was not afforded an opportunity to present evidence or argument before a neutral decisionmaker prior to detention, notwithstanding his longstanding compliance with DHS supervision and the absence of any identified violation of his release conditions. Id. On October 7, 2026, one day after Petitioner had already been detained, DHS served him with a Notice to Appear charging him under INA § 212(a)(6)(A)(i). Id. The Notice to Appear charges Petitioner solely under INA § 212(a)(6)(A)(i), based upon his presence in the United

States without having been admitted or paroled for purposes of that inadmissibility provision. Id. Between DHS's initial decision to release Petitioner on parole in December 2022 and his re-detention on October 6, 2026, Petitioner incurred no criminal history, committed no known violation of his release conditions, and consistently complied with DHS supervision. Id. at 9. No individualized changed circumstance necessitating immediate detention was communicated to Petitioner. Id.

Petitioner remains in immigration custody at Adelanto Detention Center following his October 6, 2026 re-detention, without having received an individualized hearing or meaningful opportunity to contest the deprivation before it occurred. Id. at 5, 9.

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief is that his arrest and detention violate due process because he has a substantial liberty interest in his freedom and he was not provided pre-deprivation notice or hearing. Pet. at 18. His second claim for relief is that his arrest and detention violate due process because his detention does not serve the legitimate government purpose of preventing flight or mitigating danger. Id. at 20–21. His third claim for relief is that his detention violates the Immigration and Nationality Act ("INA") because he is being treated as if he is subject to mandatory detention under Section 1225(b). Id. 21–22.

Petitioner seeks immediate release from custody on his previous conditions and an order enjoining Respondents from re-detaining Petitioner absent constitutionally adequate procedures and lawful statutory authority. Id. at 23. Petitioner also seeks reasonable attorney's fees. Id.

Respondents failed to present an opposition argument. See Dkt. 7, Petitioner's Notice of Respondents 'Non-Compliance with Court-Ordered Briefing Schedule.

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

As an initial matter, it is undisputed that Petitioner has resided in the United States since 2022. Pet. at 6. It is further undisputed that Petitioner was previously released from immigration custody pursuant to INA § 212(d)(5)(A), often referred to as "humanitarian parole." Id.; see e.g., Noori v. LaRose, 807 F. Supp. 3d 1146 (S.D. Cal. 2025). Petitioner has no criminal history and has complied with the conditions of his release. Id. at 6. Based on these undisputed facts, the Court concludes that Petitioner

developed a substantial liberty interest in remaining out of custody based on his previous release from custody, the length of time he lived in the United States, and the ties he built to the community over the past four years. Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."); see also Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) (same). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). In contrast, the government's interest in detaining Petitioner without a pre-deprivation hearing is low. Martinez Cruz v. Lyons, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025) (collecting cases); Pinchi, 792 F. Supp. 3d at 1063.

Furthermore, "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of his liberty interest absent a pre-detention hearing." Cruz v. Lyons, No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129 (C.D. Cal. Nov. 6, 2025). The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. Zadvydas v. Davis, 533 U.S. 678, 699 (2001). But Petitioner has not been afforded any process to determine whether his detention in fact advances either purpose. Since the initial determination that Petitioner should be released from custody because he posed no danger to the community and was not a flight risk, there

is no evidence that these findings have changed. See Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Petitioner has no criminal record, and he has diligently complied with the conditions of his release. See Pet at 6. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." Id. "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk ...." Id. Furthermore, Respondents have not identified any evidence to suggest the purpose for which parole was authorized (i.e., release on humanitarian grounds while Petitioner applies for asylum) has been accomplished. 8 C.F.R. § 212.5(e)(2)(i). Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention. See Garcia v. Noem, No. 25CV3759-LL-BLM, 2026 WL 194745, at *3 (citing Pinchi, 792 F. Supp. 3d at 1035).

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. See Pinchi, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); Cruz, No. 5:25-cv-02879, Dkt. 12 at 7 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994. Additionally, "any fiscal or administrative

burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" Sun v. Santacruz, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (quoting Doe v. Becerra, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. See Garcia, 2026 WL 194745, at *3.

Therefore, the Court concludes that Petitioner's arrest without a pre-deprivation hearing violated Petitioner's procedural due process rights. See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Given these violations of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). Thus, "[a]s has been found in countless similar cases in this Circuit, the appropriate remedy in such cases is to order Petitioner placed in the position he would have been absent the due process

violation—that is, he should be released from custody on the conditions that were initially imposed." Iurii Mazurov v. Desert Annex Det. Facility, No. 5:26-CV-02236-BFM, 2026 WL 1365164, at *4 (C.D. Cal. May 8, 2026) (citing cases); see also Changoluiza Corrales v. D. Marin, No. EDCV 26-01716-KK-RAOX, 2026 WL 1047934, at *6 (C.D. Cal. Apr. 15, 2026) (citing Pablo Sequen v. Albarran, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025)); Morales v. U.S. Immigr. & Customs Enf't, No. 5:26-CV-01404-DOC-MAR, 2026 WL 1026234, at *7 (C.D. Cal. Apr. 15, 2026) ("join[ing] numerous of its sister courts in finding that Petitioner's detention is unlawful" due to unlawful parole revocation and ordering release notwithstanding prior TRO providing a bond hearing and collecting cases); Gutierrez v. Semaia, No. 5:26-CV-01181-HDV, 2026 WL 916773, at *2 (C.D. Cal. Mar. 27, 2026); Domingo v. Kaiser, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) (similar). As one court in this District has aptly put it, "[t]he Court must heed the language in Mathews that '[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing.'" Villegas Molina v. Mullin, No. 2:26-CV-04091-MWC-SP, 2026 WL 1182194, at *3 (C.D. Cal. Apr. 23, 2026) (quoting Mathews, 424 U.S. at 331).

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[1] See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the

---

1 As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is very high because Immigration Judges lack jurisdiction to consider Petitioner's request for custody re-determination pursuant to Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025). Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being detained in violation of the INA and his due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited injunction against

future re-detention without notice and a pre-deprivation hearing.[2]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees and costs. The Court will consider an application under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## ORDER

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner, **Mohit Pathania (A# 246-595-886)** ("Petitioner") from custody subject only to conditions that were in place prior to his October 6, 2026 detention. Respondents shall return any confiscated property and documents to Petitioner upon release, including his Employment Authorization Document, Social Security card, and driver's license. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice

2 Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before a neutral decisionmaker at which the Government bears the burden of proof to show by clear and convincing evidence that there has been a material change in circumstances such that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. **Respondents shall file a notice of compliance within twenty-four hours.**

IT IS SO ORDERED.

DATED: October 29, 2026

HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE